| DANNY "DAN" SANTIAGO NÚÑEZ como alcalde electo del MUNICIPIO DE VILLALBA<br><br>Recurrido<br><br>v.<br><br>MUNICIPIO AUTÓNOMO DE VILLALBA Y OTROS<br><br>Peticionarios | KLCE202500019 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Ponce<br><br>Civil Núm.: VI2024CV00213<br><br>Sobre: Sentencia Declaratoria, Interdicto Preliminar y Permanente |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio y el Juez Rodríguez Flores

Rodríguez Flores, juez ponente

## RESOLUCIÓN

En San Juan, Puerto Rico, a 27 de febrero de 2025.

Comparece la parte peticionaria, Municipio Autónomo de Villalba y la Hon. Marena Navarro Rivera, Alcaldesa Interina (en adelante, Peticionarios) y solicita que revoquemos la resolución emitida por el Tribunal de Primera Instancia, Sala Superior de Ponce (TPI), el 3 de enero de 2025[1]. Mediante el referido dictamen, el foro primario declaró No Ha Lugar las mociones de desestimación presentadas por los Peticionarios[2].

Tras examinar el recurso y los documentos que conforman el apéndice, prescindimos de la comparecencia de la parte recurrida[3], denegamos expedir el auto de *certiorari*[4].

---

[1] Notificada el 7 de enero de 2025.

[2] Se presentaron dos (2) mociones de desestimación los días 12 y 19 de diciembre de 2024.

[3] Ello, conforme a la Regla 7 (B) (5) del Reglamento del Tribunal de Apelaciones, que nos permite "prescindir de términos no jurisdiccionales, escritos, notificaciones o procedimientos específicos en cualquier caso ante [nuestra] consideración, con el propósito de lograr su más justo y eficiente despacho [...]". 4 LPRA Ap. XXII-B, R. 7 (B) (5).

[4] El 10 de enero de 2025, fue declarada no ha lugar una *Moción en Solicitud de Auxilio de Jurisdicción* presentada por el Municipio el 8 de enero de 2025.

I.

El 4 de diciembre de 2024, el señor Danny "Dan" Santiago Núñez, alcalde electo de Villalba, presentó una acción sobre sentencia declaratoria, interdicto preliminar y permanente en contra del alcalde saliente, el Hon. Luis Javier Hernández Ortiz, el Municipio Autónomo de Villalba y la Legislatura Municipal del Municipio (en adelante, alcalde saliente o parte recurrida). En síntesis, alegó que, el 3 de diciembre de 2024, la Legislatura Municipal del alcalde saliente aprobó las Resoluciones Núm. 010, Serie 2024-2025 (Resolución 010) y Núm. 011, Serie 2024-2025 (Resolución 011). En cuanto a la Resolución 010, la parte peticionaria alegó que esta le confiere potestad al alcalde saliente para establecer un plan de pago de deuda con la compañía Torres & Colón. Respecto a la Resolución 011, arguyó que ésta confiere potestad al alcalde saliente a realizar todas las gestiones útiles, necesarias y convenientes para adquirir mediante compra el edificio San Gerardo, para la ubicación permanente de las facilidades de la policía municipal y oficina de manejo de emergencias. Además, la parte peticionaria arguyó que el Alcalde saliente, convocó a la Legislatura Municipal a una sesión extraordinaria en la noche del martes, 3 de diciembre de 2024 –a menos de una semana de iniciar el proceso de transición con la parte peticionaria– con el fin de aprobar la compra de un edificio por la suma de $1.3 millones, endeudando así aún más al Municipio, el cual alegadamente se encuentra en quiebra y fue señalado en varias ocasiones por la Oficina del Contralor por deficiencias administrativas. Solicitó al foro primario que emitiera sentencia declaratoria e interdicto preliminar y permanente contra el alcalde saliente y que se paralizara la Resolución 010 y 011.

Luego de varios trámites procesales, el 5 de diciembre de 2024, el Tribunal expidió Orden de Interdicto Preliminar,

paralizando de inmediato las referidas resoluciones, así como toda erogación de fondos relacionados a las gestiones de estas y señaló vista para el 16 de diciembre de 2024.

El 12 de diciembre de 2024, el alcalde saliente presentó una Moción de Desestimación.[5] En esta, alegó que la parte peticionaria presentó unas alegaciones y solicitó un *Injunction* Preliminar y Permanente, sin que surja alegación concreta de que tales actos legislativos hayan sido aprobados al margen de la Ley. Arguyó que la reclamación adolece de problemas de justiciabilidad, los cuales inciden sobre la jurisdicción del tribunal, que la parte peticionaria no alegó el sufrimiento de un daño claro, palpable y específico que amerite la concesión del remedio judicial solicitado y que sus alegaciones eran generalizadas. Por otro lado, adujo que la parte peticionaria pretende pasar juicio sobre los méritos de los actos legislativos de una Legislatura Municipal aún en funciones, pues su mandato vence en enero de 2025, y hasta ese entonces puede ser convocada de manera extraordinaria, por el alcalde en funciones, siempre que la convocatoria cumpla con los requisitos estatutarios, lo cual alegó no es materia judicial. Añadió que, en el presente caso, no se está alegando la violación a derechos constitucionales individuales que justifiquen la suspensión de una ordenanza municipal debidamente aprobada y firmada. También, que no se

---

[5] Junto a esta, la parte recurrida acompañó copia de la Escritura de Compraventa Número 2, otorgada el 7 de diciembre de 2024, por Efraín Flores Flores, Neri Rosa Flores Flores, Lourdes María Flores Flores, Vanesa Flores Flores y María Juanita Flores Flores, a favor del Municipio de Villalba, y compareciendo el Hon. Luis Javier Hernández Ortiz, en su carácter de Alcalde del Municipio Autónomo de Villalba. Fue anejada, copia certificada de la Ordenanza Núm. 011, Serie 2024-2025 con fecha de presentación del 25 de noviembre de 2024, firmada por Glendalys Torres Alvelo, Secretaria Interina y Eduardo Ortiz Laboy, Presidente de la Legislatura Municipal del Municipio Autónomo de Villalba, el 3 de diciembre de 2024 y aprobada por el Alcalde de Villalba el 4 de diciembre de 2024. Se acompañó también certificación de copia fiel y exacta de la Ordenanza Núm. 011, Serie 2024-2025, firmada por Glendalys Torres Alvelo, Secretaria Interina, de fecha del 4 de diciembre de 2024, así como tres (3) cartas del 3 de febrero de 2023 de la Oficina Central de Recuperación y Reconstrucción de Puerto Rico, sobre Obligación de la Nueva Versión de Fema-43-DR-PR- PW 05861, Improved Project-New Relocation MVIL009 Villalba Emergency Operation Center de FEMA en la cual se obligan los fondos de FEMA por la cantidad total de $3,113,382.15 con una cantidad de fondos federales obligados de $2,802,043. (Entrada 16)

realizaron alegaciones de que la aprobación de las ordenanzas no haya seguido el procedimiento estatutario, sino una acción que impugna la conveniencia de su aprobación, lo cual sostienen, es materia legislativa y no judicial.

Por otra parte, el alcalde saliente alegó que la orden de interdicto no fue diligenciada por la parte demandante hasta el 10 de diciembre de 2024, cuando ya se había otorgado la Escritura de Compraventa que se autorizó, en virtud de la ordenanza núm. 11 del 3 de diciembre de 2024, por lo que el planteamiento sobre la validez o no de la mencionada Ordenanza Municipal, obliga a acumular a una parte indispensable y que el remedio se haya tornado académico. Por ello, sostuvo que procede la desestimación de la solicitud de la parte peticionaria, por no ser una reclamación justiciable y, en la alternativa, por no cumplirse con los requisitos para la expedición de un auto de *injunction*, por lo que se **solicitó la desestimación, al amparo de la Regla 10.2 de Procedimiento Civil**.[6]   El 19 de diciembre de 2024, se presentó una segunda moción de desestimación, donde se añadió a la Alcaldesa Interina -Hon. Marena Navarro Rivera-. No obstante, la solicitud y argumentos eran similares a la moción de desestimación presentada el 12 de diciembre de 2024.

Así las cosas y luego de evaluar los argumentos de las partes, el foro primario dictó una *Resolución* detallada y fundamentada donde declaró no ha lugar a las mociones de desestimación al amparo del Regla 10.2 de las de Procedimiento Civil, *supra,* presentada por los Peticionarios y ordenó la continuación de los procedimientos.

Inconforme, los Peticionarios acuden ante nos vía *certiorari* y formularon los siguientes errores:

PRIMER ERROR: Erró el Honorable Tribunal de Primera Instancia al no desestimar una demanda ante la

---

[6] 32 LPRA Ap. V. Regla 10.2.

ausencia de la legitimación activa por parte de un alcalde electo que no es funcionario hasta que juramente.

SEGUNDO ERROR: Erró el Honorable Tribunal de Primera Instancia al no desestimar una demanda ante la ausencia de justiciabilidad al ser la controversia de marras una clara cuestión política.

TERCER ERROR: Erró el Honorable Tribunal de Primera Instancia al no desestimar una demanda que pretende que se emita un injunction que impida la ejecución de una ordenanza municipal en ausencia de una declaración de que esa ordenanza sea inconstitucional, violentando las disposiciones de la ley anti-injunction.

CUARTO ERROR: Erró el Honorable Tribunal de Primera Instancia al no desestimar una demanda que pretende intervenir con las decisiones de una legislatura municipal a pesar de que el alcalde electo no es legislador municipal y no ha superado la inmunidad parlamentaria que protege las decisiones políticas de los legisladores municipales.

## II.

El auto de *certiorari* es el vehículo procesal que permite a un tribunal de mayor jerarquía revisar las determinaciones interlocutorias realizadas por un foro inferior. La expedición del auto descansa en la sana discreción del tribunal.

En los casos civiles, la Regla 52.1 de Procedimiento Civil, delimita las instancias en las que procede que este Tribunal de Apelaciones expida el recurso de *certiorari.* La citada Regla establece que el recurso sólo se expedirá cuando se recurra de una orden o resolución bajo remedios provisionales de la Regla 56, *injunctions* de la Regla 57, o de la denegatoria de una moción de carácter dispositivo. Por excepción, y en el ejercicio discrecional del foro apelativo, se podrá expedir el recurso cuando se recurre de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, casos de relaciones de familia, casos revestidos de interés público o cualquier otra situación, en la que esperar por una apelación constituiría un fracaso irremediable de la justicia. Según

lo dispuesto en la Regla 52.1, *supra,* al denegar la expedición de un recurso de certiorari, el Tribunal de Apelaciones no tiene que fundamentar su decisión.

Por otro lado, la Regla 40 del Reglamento del Tribunal de Apelaciones instituye los criterios que debemos tomar en consideración al atender una solicitud de expedición de un auto de certiorari.  Estos criterios son:

> A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> B. Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> F. Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Ello impone a este Tribunal la obligación de ejercer prudentemente su juicio al intervenir con el discernimiento del foro de instancia, de forma que no se interrumpa injustificadamente el curso corriente de los casos ante ese foro.  Por tanto, de no estar presente ninguno de los criterios esbozados, procede abstenernos de expedir el auto solicitado.

Es decir, este Tribunal no habrá de intervenir con el ejercicio de la discreción del Tribunal de Primera Instancia, salvo en "un craso abuso de discreción o que el tribunal [haya actuado] con prejuicio y parcialidad, o que se [haya equivocado] en la interpretación o aplicación de cualquier norma procesal o de

derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial".

III.

La **Regla 10.2** de las de Procedimiento Civil de 2009, *supra,* establece que toda defensa de hechos o de derecho contra una reclamación en cualquier alegación se debe exponer en la alegación respondiente que se hiciera a las mismas. No obstante lo anterior, a opción de la parte que alegan, las siguientes defensas pueden hacerse mediante moción independiente debidamente fundamentada: (1) falta de jurisdicción sobre la materia; (2) falta de jurisdicción sobre la persona; (3) insuficiencia del emplazamiento; (4) insuficiencia del diligenciamiento del emplazamiento; (5) dejar de exponer una reclamación que justifique la concesión de un remedio; y (6) dejar de acumular una parte indispensable. Regla 10.2 de las de Procedimiento Civil, *supra*; véase, además, *Aut. Tierras v. Moreno & Ruiz Dev. Corp.*, 174 DPR 409, 428 (2008).

Primeramente, la parte demandada debe presentar la moción para solicitar que se desestime la demanda en su contra bajo alguna de las defensas antes expuestas. *Montañez v. Hosp. Metropolitano*, 157 DPR 96, 104 (2002). Por tanto, la precitada Regla permite que el demandado solicite la desestimación de la demanda incoada en su contra cuando de las alegaciones de la misma es evidente que alguna de las defensas afirmativas prosperará. *Sánchez v. Aut. de los Puertos,* 153 DPR 559, 569 (2001). En específico, cabe indicar que si dicha moción se basa en la defensa de que la demanda deja de exponer una reclamación que justifique la concesión de un remedio, la misma se dirige a los méritos de la controversia y no a los aspectos procesales del caso como las demás mociones de desestimación bajo la Regla 10.2 de las de Procedimiento Civil, *supra. Montañez v. Hosp. Metropolitano, supra,* a las págs. 104-105.

En cuanto a lo anterior, el Tribunal Supremo ha resuelto que cuando los tribunales se enfrenten a una moción de desestimación deberán examinar las alegaciones contenidas en la demanda de forma conjunta y de la forma más liberal posible a favor de la parte demandante.

Además, es norma reiterada que no procede la desestimación bajo dicha defensa a menos que se desprenda con toda certeza que el demandante no tiene derecho a remedio alguno bajo cualquier estado de hechos que puedan ser probados en apoyo a su reclamación. Tampoco procede la desestimación de una demanda por dejar de exponer hechos que justifiquen la concesión de un remedio si dicha demanda es susceptible de ser enmendada.

De igual manera se ha reconocido que ante una moción de desestimación el foro de instancia tiene que tomar como ciertas todas las alegaciones bien hechas en la demanda. Por tanto, el tribunal debe permitir cuanta inferencia sea posible hacer de los hechos bien alegados en la demanda para evitar su desestimación. *Montañez v. Hosp. Metropolitano, supra,* a la pág. 105. Así las cosas, los tribunales tienen el deber de considerar si la demanda es suficiente para constituir una reclamación válida a la luz de la situación más favorable al demandante y al resolver toda duda a favor de éste. *Unisys v. Ramallo Brothers,* 128 DPR 842, 858 (1991).

IV.

Ante la solicitud de desestimación conforme la **Regla 10.2** de las de Procedimiento Civil, *supra,* el foro revisado, luego de considerar las alegaciones de la forma más favorable para el recurrido, la declaró no ha lugar. En su dictamen, dispuso que tenía jurisdicción para atender los asuntos en controversia, al amparo del Código Municipal.[7] En específico, entenderá en los procedimientos

---

[7] Ley Núm. 107 de 13 de agosto de 2020, según enmendada.

para impugnar resoluciones, ordenanzas o determinaciones de Asamblea la Legislativa Municipal.

El foro primario también estableció que evaluará si hubo violaciones a disposiciones constitucionales o legales, así como procedimientos inadecuados en la aprobación de las resoluciones u ordenanzas.   Entiéndase por lo anterior, la posible falta de jurisdicción o autoridad por parte de la Legislatura Municipal y/o el Alcalde.   Por último, indicó que evaluará si las resoluciones u ordenanzas cumplieron y cumplen con los requisitos legales y procesales y lo dictaminaría mediante sentencia declaratoria.

Tras un análisis objetivo, sereno y cuidadoso del expediente, en correcta práctica adjudicativa apelativa, a la luz de los criterios esbozados en la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, resolvemos que debemos abstenernos de ejercer nuestra función revisora discrecional y rechazar intervenir con la determinación del TPI.  Entiéndase que no encontramos que el TPI haya incurrido en un abuso de discreción o que este haya actuado con el prejuicio o en fracaso de la justicia.  Tampoco se demostró que el tribunal se haya equivocado en la interpretación o aplicación de una norma procesal y que, intervenir en esta etapa, evitaría un perjuicio sustancial contra cualquiera de las partes.

V.

Conforme a lo anteriormente expuesto, se deniega la expedición del auto de *certiorari*.

Lo acuerda y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

El Juez Sánchez Ramos disiente con opinión escrita.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

| DANNY "DAN" SANTIAGO NÚÑEZ como alcalde electo del MUNICIPIO DE VILLALBA<br><br>Recurrido<br><br>v.<br><br>MUNICIPIO AUTÓNOMO DE VILLALBA Y OTROS<br><br>Peticionarios | KLCE202500019 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Ponce<br><br>Civil Núm.: VI2024CV00213<br><br>Sobre: Sentencia Declaratoria, Interdicto Preliminar y Permanente |
| --- | --- | --- |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio y el Juez Rodríguez Flores.

**OPINIÓN DISIDENTE DEL JUEZ SÁNCHEZ RAMOS**

La acción de referencia debió ser desestimada de plano por el Tribunal de Primera Instancia ("TPI"). La controversia sobre la necesidad o conveniencia del gasto autorizado por las ordenanzas impugnadas constituye una cuestión política no susceptible de adjudicación por el Poder Judicial. Cualquier intromisión judicial al respecto establecería un peligroso precedente, pues **invitaría múltiples pleitos por quien se oponga a cualquier gasto que las autoridades políticas de turno determinen debe realizarse**, convirtiendo así a los tribunales en un foro político encargado de "revisar", y así tener la última palabra sobre, las determinaciones de política pública tomadas por los funcionarios electos por el pueblo, y facultados por nuestro sistema jurídico, para ejercer dicha función.

I.

A través de la *Tercera Acción Civil Jurada Enmendada de Sentencia Declaratoria, Interdicto Preliminar y Permanente* (la "Demanda"), el demandante impugna la validez de dos ordenanzas

del Municipio de Villalba, las cuales se alega fueron aprobadas el 3 de diciembre de 2024 (las "Ordenanzas").

Se indica que una de las Ordenanzas (la "Ord. 10") autorizó al Alcalde de Villalba a acordar un plan de pago para saldar una deuda de $946,125.23 con un contratista por concepto de la "reconstrucción de la Pista Atlética Raúl Rodríguez Berríos". Según el plan de pago autorizado por dicha ordenanza, se haría un primer pago de $449,771.80, y cuatro pagos anuales, los primeros tres de $100,000.00, y el último de $96,353.43.

Se señala que la otra ordenanza (la "Ord. 11") autoriza al Alcalde de Villalba a comprar un edificio para "la ubicación permanente de las facilidades de la policía municipal y oficina de manejo de emergencias". A esos fines, se autorizó a dicho funcionario a "pagar la suma de $1,306,000.00" a favor del vendedor del edificio.

Planteó el demandante que las Ordenanzas "endeuda[rían] así aún más al municipio que se encuentra en quiebra". Aduce que se trata de un "**pésimo negocio**" que "sólo se hace para agradar a una o varias personas". Esgrime que "es **cuestionable** la susodicha compraventa", y que las Ordenanzas "resultarían en una derogación y pérdida de fondos públicos **innecesariamente**". Arguye que "una administración saliente no tiene facultad para comprometer recursos más allá de su término, especialmente si dichas acciones no responden a necesidades esenciales o violan principios presupuestarios". Insiste en que "[g]astos que comprometan recursos de la próxima administración podrían interpretarse como **obstrucción al gobierno entrante**". Sugiere que las Ordenanzas autorizan gastos "**extravagantes", "excesivos" e "innecesarios**", según definidos dichos términos por la ley aplicable. Denomina lo autorizado por las Ordenanzas como un "**despilfarro, corrupción y amiguismo** en contrataciones públicas".

II.

Es un principio de nuestro sistema republicano de gobierno que cada rama de gobierno tiene unas funciones medulares con las cuales las otras no pueden interferir; generalmente, se conoce este principio como el de separación de poderes. Art. I, Sec. 2, Const. ELA, *supra*. La doctrina de separación de poderes está invariablemente atada a nuestra concepción de cómo debemos organizarnos y funcionar políticamente. *Díaz Carrasquillo v. García Padilla*, 191 DPR 97 (2014); *AAR, Ex parte*, 187 DPR 835, 855 (2013). Esto, porque la finalidad de esta doctrina es mantener la colaboración entre las tres (3) ramas de gobierno, sin que una domine o interfiera indebidamente con la otra. *Colón Cortés v. Pesquera*, 150 DPR 724, 750 (2000). El propósito ulterior es proteger la libertad de los ciudadanos, garantizando la independencia de cada una de las ramas de gobierno. *Íd.*

Precisamente como corolario de esta doctrina, se ha desarrollado jurisprudencialmente una sabia doctrina de autolimitación judicial que, en ciertas circunstancias, aconseja la no intervención del tribunal con asuntos estrictamente políticos. En efecto, la doctrina de cuestión política plantea, en esencia, que hay asuntos que no son susceptibles de adjudicación o determinación judicial, porque su resolución corresponde a las ramas políticas del gobierno y la intervención judicial conllevaría una intromisión indebida en los asuntos delegados a dichas ramas. *Noriega Rodríguez v. Hernández Colón,* 135 DPR 406, 422 (1994). Así, cuando aplica la doctrina de cuestión política, se considera que el caso no será justiciable y que el tribunal debe abstenerse de adjudicarlo.

Los criterios que guían la determinación de si aplica la doctrina de cuestión política son:

A. La Constitución delega expresamente el asunto en controversia a otra rama del Gobierno.

B. No existen criterios o normas judiciales apropiadas para resolver la controversia.

C. Resulta imposible decidir sin hacer una determinación inicial de política pública que no le corresponde a los tribunales.

D. Resulta imposible tomar una decisión sin expresar una falta de respeto hacia otra rama de gobierno.

E. Hay una necesidad poco usual de adherirse sin cuestionamiento a una decisión política tomada previamente.

F. Hay el potencial de confusión proveniente de pronunciamientos múltiples de varios departamentos del Gobierno sobre un punto. *Silva v. Hernández Agosto,* 118 DPR 45, 54 (1986); *Baker v. Carr*, 369 U.S. 186 (1962).

Con relación a lo anterior, se ha explicado que existen tres vertientes de la doctrina de cuestión política, a saber: 1) la que requiere que los tribunales no asuman jurisdicción sobre un asunto, porque este ha sido asignado textualmente por la Constitución a otra rama del Gobierno; 2) aquella según la cual los tribunales deben abstenerse de intervenir, bien porque no existen criterios de decisión susceptibles de descubrirse y administrarse por los tribunales, o bien por la presencia de otros factores análogos; y 3) la que aconseja la abstención judicial por consideraciones derivadas de la prudencia. *Noriega Rodríguez,* 135 DPR a la pág. 422 (1994).

### III.

Concluimos que no le corresponde al Poder Judicial inmiscuirse en, y así intentar dirigir o controlar, las determinaciones de política pública sobre asignación de recursos municipales, el cual corresponde exclusivamente a las divisiones políticas del municipio, ello según contemplado por la legislación vigente que delega estos poderes.

El asunto de si las finanzas de un municipio le permiten incurrir en gastos como los contemplados en las Ordenanzas no es susceptible de una determinación judicial que permita un remedio

específico, por tratarse de una cuestión política, delegada expresamente a las ramas políticas del municipio por virtud de la Ley 107-2020.

En efecto, están aquí presentes prácticamente todas las consideraciones que informan la decisión de si un asunto es una cuestión política. *Noriega Rodríguez, supra*; *Silva, supra.* En primer lugar, la Ley 107 delega expresamente en las ramas políticas del municipio la preparación de un presupuesto y la determinación de qué proyectos públicos serán prioritarios y, por tanto, deberán ser objeto de determinada asignación de recursos municipales. Los tribunales debemos "recordar la diferencia fundamental que debe existir entre el estrado [...] y el hemiciclo de los Cuerpos Legislativos..." *AAR, Ex parte*, 187 DPR a la pág. 847.

En segundo lugar, no existen criterios o normas apropiadas que nos permitirían determinar si lo autorizado por las Ordenanzas constituye un "pésimo negocio", o si el gasto allí contemplado es "innecesario" o "extravagante", en sustitución del criterio de las autoridades políticas municipales de turno. Por ejemplo, este tipo de determinación requeriría pasar juicio, por un lado, sobre la validez de la deuda reconocida al contratista y sobre la posible exposición del municipio a una reclamación aún mayor al respecto si no se aprobase un plan de pago, así como sobre la conveniencia, como cuestión de política pública, de adquirir determinado inmueble para albergar ciertas entidades municipales, ello en comparación con otros posibles usos de los recursos municipales disponibles.

Precisamente este es el tipo de decisión que involucra consideraciones de política pública que solamente los funcionarios electos por el pueblo pueden realizar, sin que un tribunal tenga los elementos de juicio ni los mecanismos para realizar este fino y delicado balance. Es risible (como cuestión práctica), y peligrosa

(por anti-democrática), la idea de que un tribunal tiene los elementos de juicio para determinar si lo autorizado por las Ordenanzas realmente constituye un "pésimo negocio" o un gasto "innecesario".

En tercer lugar, y por razones similares, la intervención judicial con la distribución y asignación de los recursos municipales conllevaría determinaciones de política pública que no le corresponden al Poder Judicial.

En cuarto lugar, la prudencia aconseja que el Poder Judicial se abstenga de intervenir, pues estamos ante una disputa entre un alcalde entrante y otro saliente, y cada uno de ellos, o tenía o ahora tiene, amplios y numerosos mecanismos para hacer valer sus prerrogativas frente al otro.

Finalmente, no es posible invalidar las Ordenanzas sin que ello conlleve una falta de respeto a las autoridades políticas municipales.

En síntesis, pretender intervenir, por las razones que esgrime el demandante, con lo legislado por el Municipio de Villalba constituiría una interferencia indebida con las funciones municipales, ejecutivas y legislativas, delegadas expresamente por ley a las divisiones políticas de los municipios. Se trata de un asunto que no es susceptible de una determinación judicial, por tratarse de una cuestión política. Como se consignó en *Silva*, 118 DPR a la pág. 57:

> "… La teoría de la separación de poderes requiere que las facultades delegadas por el pueblo en la Carta Constitutiva se distribuyan entre las tres ramas… Su éxito <u>depende de que cada una acepte y respete la autoridad de las otras y entienda la interrelación de sus funciones</u>. Su perdurabilidad requiere que cuando haya un conflicto sobre el alcance de los poderes constitucionales de cualquiera de ellas, los tribunales intervengan con prudencia y deferencia para aclarar los contornos de la Constitución y facilitar la resolución de las diferencias." (subrayado nuestro).

IV.

Así pues, concluimos que la Demanda claramente constituye un intento impermisible de trasladar un diferendo político, típico de una campaña partidista, a la esfera judicial. Las propias alegaciones de la Demanda delatan lo anterior, al utilizar el tipo de retórica común al ámbito político, la cual resulta impertinente en el ámbito jurídico.

En la medida que se propone algún tipo de norma a los efectos de que, durante una "transición", un municipio no puede autorizar gastos que no sean del agrado del alcalde (o de una legislatura municipal) entrante, ello no encuentra apoyo jurídico o lógico alguno. De hecho, precedentes recientes, muy notorios, en términos de legislación estatal, apuntan fuertemente en la dirección contraria. Véase, por ejemplo, *Dalmau Ramírez v. ELA*, 2024 TSPR 95 (validando asignación de recursos futuros por una legislatura "saliente"); Ley 167-2020 (legislatura saliente asigna recursos futuros para una "votación especial" con el fin de escoger "delegados especiales" a la rama legislativa del gobierno federal, y para sufragar los salarios y gastos de estos "delegados").

Tampoco existe base jurídica para la noción de que un municipio no pueda comprar un inmueble, o autorizar un plan de pago para una deuda existente, por razón de que ello comprometería fondos de presupuestos futuros. Este tipo de gasto está expresamente autorizado por ley y, en muchas ocasiones, necesariamente supone la asignación de fondos en presupuestos futuros. Por supuesto, legislaturas municipales futuras siempre tienen la discreción para determinar si los fondos disponibles ese año serán utilizados, en vez, para otros propósitos.

La subsistencia de esta Demanda constituye, así pues, un precedente peligroso, al abrir la puerta a que se sujete cualquier determinación legislativa de un municipio al escrutinio de un

tribunal, bajo criterios inmanejables, enteramente subjetivos y, peor aún, bajo criterios que corresponden propiamente al proceso político.

Por los anteriores fundamentos, hubiese expedido el auto solicitado y ordenado la desestimación de la acción judicial de referencia; por tanto, disiento.

En San Juan, Puerto Rico, a 27 de febrero de 2025.


                              ROBERTO SÁNCHEZ RAMOS
                              JUEZ DE APELACIONES